We'll now move to the next case on the calendar, Ovedo-Chavez v. Bondi. Ovedo-Chavez v. Bondi Good morning. May it please the Court, my name is Kari Hong. I'm from the Florence Project. I represent Petitioner Carlos Ovedo-Chavez, whom I will refer to as Mr. Ovedo. I will reserve two minutes of my time and I will watch the clock. I will talk about cancellation and then CAT. On cancellation of removal, the IJ informed Mr. Ovedo that he was not eligible for cancellation because the DHS served his notice to appear, also known as the NTA, three days before the 10-year period to make him eligible. While his case was before this Court, the Supreme Court decided niche Chavez, which clarified that a defective NTA will not stop time. For 21 years, Alcaraz v. INS in this Court said that when a case is pending before it is issued, and if there is any new law that is decided after the BIA briefing, this Court will remand for the agency to apply that new law and reconsider its decision. The government argues that this Court should newly draw that line, not where Alcaraz placed it, but now limit that rule to situations in which the intervening law happens before the IJ decision is issued. And Petitioner's argument is that we as a panel have no basis for doing that, right? Correct. And the Alcaraz rule is clear. It's easy to apply. It's been the rule for 21 years. And the government offers two defenses to change. First, the government argues that the new rule would give the Board a chance to reconsider an issue, but as a practical matter, under the Board's own rules, it does not automatically accept briefing outside of the briefing schedule. And the second, the government argues that this is how Santis-Batista was decided, but that is not true. Santis-Batista applied Alcaraz's rule. In the wake of Nis-Chavez, this Court has routinely and repeatedly given the remedy that Mr. Oveda seeks here. When his case was pending, the Court will remand his case to let him apply for cancellation of removal. This is the same small ask that Mr. Oveda is making before the Court. The government has provided no reason to depart from this precedent. If the Court agrees with this argument, it need not reach any other issue in the petition. Is that right? Yeah. Why is that? Why is that?  Because if the Court agrees with me on this alone, it can grant the case. It can grant and remand the petition. But wouldn't he, at that point, don't we have to rule on the other claims for relief first? I argue that you have the authority, but if you disagree with me on that one, you can grant the cancellation alone. Turning to the CAC claim, I agree. I'm just trying to conceptually understand what you're saying. If we left the other three in abeyance, would they still be open? Other three in abeyance? If we left the relief claims, the CAC claim in abeyance, if we didn't rule on it, then what? Well, Your Honor, I agree with you that it's important for the Court to reach the CAC claim. And why did you say that we could just remand? Oh, just to hedge my bets, Your Honor, that even if you disagree on everything But we first would have to rule on them. Correct. Correct. I'm sorry. I thought you meant we could just do that and do nothing else. I'm sorry, what's that? I thought you meant we could just do that and not rule on the other issues. No, no, Your Honor. I got it. Just want to make clear that at a minimum, he should be eligible for cancellation. Turning to the CAC claim, then. Can I ask you a question about cancellation? It was clear that this was discussed at the time the first notice came and the initial meeting with the immigration judge. They discussed, oh, you made it almost to the 10-year mark. And then, obviously, Nez Chavez came later on. What about the Pereira case, which seemed to have said much the same thing in 2018 before the actual hearing, the merits hearing, took place before the immigration judge? And the cancellation request was not raised again at that time, even though Pereira might have provided a basis for it. Can you explain that? Absolutely. And this is discussed in the exhaustion discussion of the opening brief, where what happened is after Pereira, the BIA en banc decided a matter of Bermuda's coda, and there they said that the defective NTA won't stop time. They actually then went around it. I'm sorry. Mendoza-Hernandez was the en banc case in 2019. So that was after Pereira. And there they said the time will run until the second hearing notice is issued. And then there was a circuit split on whether Mendoza-Hernandez applied in the Ninth Circuit in May 2018. So the stop time rule wouldn't apply? It would run until the... Until the second hearing notice, is what Mendoza-Hernandez, the BIA, said. And there were circuit splits, agreeing or disagreeing with that. But in the Ninth Circuit, we had Lopez won, which in May 2019 rejected this two-step cure of the BIA. But then there was an en banc vote on January 23, 2020, where the full court decided to hear that issue. That was when his briefing schedule was due on November, where there was literally a clean slate in the Ninth Circuit, where the Ninth Circuit said, we do not know what the rule is and we're going to hold off to decide it until Nishevez comes down. The BIA decision was decided on April 28, 2021. And then the day after, Nishevez came down and made it clear that he is eligible for cancellation. So he could not have raised this under any Ninth Circuit authority, and it would have been futile. Even though Pereira didn't say that, it was the BIA's interpretation of Pereira that caused the issue not to be raised at the merits hearing? Yes, Your Honor. Because then, in 2019, well, there were two BIA decisions. The Bermudez-Cota came out, and that was in 2018. And then in 2019, there was the en banc decision, saying that you had two decisions, and that came out after the IJ decision. So I want to ask you, just before you get into the CAC claim, there was a negative credibility finding. You don't challenge it. So I gather that you're not challenging the asylum withholding issues, only the CAC claim? Well, in the briefing, it challenges the withholding as well. Withholding. The particular social group. But there certainly was a negative credibility finding as to that. Correct. Which you're not challenging. Neither of the briefs challenges it. The opening brief challenges, and the reply brief challenges the failure to apply LEA and asking for intervening authorities for it to be remanded. But with regard to the – Oh, the credibility? No. No. Okay. So, but on the CAT issue, the BIA didn't seem to rely on the credibility finding, although the IJ did.  Correct. So is that why you're not – you're going forward with the CAT claim, assuming that the credibility issue is therefore not relevant? Well, exactly. Plus, in general, CAT can be granted outside of credibility. And I think of the credibility, I would ask at a minimum for this court to remand an open record simply because this credibility finding is significant. Oftentimes, the IJ will believe that someone's a liar and dismiss all their evidence, where here, the IJ simply said that his testimony, quote, lacked specificity and detailed corroboration. Did the petitioner even challenge credibility before the BIA? Your Honor, what's that? Did the petitioner even challenge credibility before the BIA? No. His former attorney did not do that. But the issues of lack of specificity and detail and corroboration are those that can be rehabilitated at a new hearing. So if this court is going to remand on the issue, would request an open record for that to occur. But getting to the merits of the CAT claim, why don't you give me your best argument as to why the BIA was wrong when it said that your client does not meaningfully address the IJ's findings concerning the lack of evidence that the government would acquiesce to any torture of the respondent by cartel members? In continuing with that BIA, the BIA said we do not look at anything that was presented to us. We can only look at the open record on pages 34 and 37 of the opening brief. I cited the extensive record showing that this cartel is the most powerful one. It is the only one that's growing, that is brutal, it's ruthless, it's killing police officers in a selective way to demand compliance. And the BIA did not reference any of those. Well, but they cited the matter of Bourbon. Well, for the withholding and asylum, he does not cite Bourbon under the CAT claim. I don't know. It says here he did not meet his burden of proof for withholding of removal under the act or for CAT. We, in the same paragraph, we adopt and affirm the decision of the immigration judge matter of Bourbon. Well, Your Honor, even under that, the IJ's decision, though, only relied on the lack of Mexican acquiescence. And that is at 82 and 83 of the IJ decision. Isn't that what your argument goes to, the lack of Mexican acquiescence? Yes, Your Honor. Yes, Your Honor. And the BIA did not discuss any of the evidence that was presented before it. But it doesn't have to. Well, under Diaz-Renanoso, when there is a material disconnect between the IJ's finding and on what's in the record, it's presumed that the BIA did not consider it. In the government's brief, she noted that it seemed very, I think the words were very unsettling or very disturbing about what was happening in Mexico with this cartel. And that shows that the disconnect was there, that the BIA needed to address why that was insufficient to show efficacy, not just efforts. All right. Counsel, you're out of time, but we'll give you a little time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Courtney Moran on behalf of the Attorney General. There's really only one issue that is properly before this Court, which is, given that there is this unchallenged adverse credibility finding, does the documentary evidence in the record compel the conclusion? But why does the adverse credibility finding relevant to the BIA, to the CAT claim, in its analysis of the CAT claim to not rely on it? Well, I think the BIA did agree with the immigration judge on that point, and then added on additional analysis saying that the evidence in the record didn't show that the Mexican government wouldn't. But with regard to... Well, all right. Maybe. Go ahead. But let me push back on that being the only issue.  Why isn't another issue, irrespective of credibility, that we should remand for reconsideration of cancellation? Well, it wouldn't be reconsideration of cancellation because it was never presented to the agency in any shape or form. And that's exactly why it hasn't been... But there was nothing to present. I mean, there's no question that under the law at the time, he didn't qualify, right? I respectfully disagree that there's no question that he didn't qualify. The IJ told him he didn't qualify, right? In his first hearing, when he was pro se, the IJ said, it looks like you don't qualify for cancellation of removal. Two months later, he got an attorney who represented him for the next six or seven years until he filed his petition for review. And that attorney at that hearing said, we're considering filing an application for cancellation of removal. So the law didn't support it. Well, I think that there certainly was a good argument that the law did support it. And at least in 2018, when the Supreme Court issued Pereira, and then also when this court issued Lopez in May of 2019, that's when his appeal was pending before the BIA. What about what Judge Pragerson said for the court in Alcarez? We do not require an alien to exhaust administrative remedies on legal issues based on events that occur after or after italicized briefing to the BIA has been completed. Why doesn't that bind us? In that case, the non-citizen had applied for the underlying relief. They had applied for suspension of deportation. But I'm talking about the holding. Isn't that a holding of the case that exhaustion is not required on legal issues based on events that occur after briefing to the BIA has concluded? I think that point is that there had been a change in the legal landscape that affected an application that had already been filed. So the holding is saying that if this person has filed an application, they at first were eligible when they filed. They weren't eligible later. It kind of went back and forth. And then this court eventually said that if that legal issue wasn't addressed after they filed their brief to the board, then that's okay. But at least we know, based on the application that they've already filed, that this court would be able to see that that issue had been resolved. And in this case, the cancellation of removal application was never presented to the agency in any shape or form. And we're not saying that it has to happen at a specific point after Pereira was issued or after Lopez was issued or before briefing or after briefing. I think that those kind of splitting of hairs avoid the main point that there's no presentation of this application at all. And so this court, in reviewing the record that's before this court, there's no evidence that the petitioner is eligible for cancellation of removal or that there's any error that the agency has committed. And as my friend on the other side has acknowledged, Niz Chavez was issued one day after the board's decision in this case. So the board did not— Well, after the briefing was completed. No, the board issued its decision here on April 28, 2021. On April 29, the Supreme Court issued Niz Chavez. Again, this petitioner at that point was still represented by the same attorney that he had for the past six years who had been saying earlier before the immigration judge that he was thinking about applying for cancellation of removal. He mentioned that in the hearing in May 2019, he mentioned again in the January—or excuse me, May 2015. In the January 2016, he mentioned again that he might consider applying for other relief and then never did that. And I think that— So, counsel, is there anything about what I'm going to read from what the IJ told the then-respondent at 140 to 141 of the administrative record? You came back in 2005. So, sir, it does not look like you're going to qualify for cancellation of removal because you don't have 10 years in the United States by the service of the notice to appear. Is there anything about what the IJ told the then-respondent that is false? Of what I just read? Is there anything that was false at that time? False or incorrect? I think that the law at that time, that was accurate based on the law at that time. However, the immigration judge said in that hearing, you know, it looks like you're not eligible, but didn't say you can't apply for this type of relief. Especially then two months later that, you know, in his next hearing, he had an attorney who said, we're considering applying for cancellation of removal now. And the immigration judge at that point didn't say, no, you can't. I've already decided this issue. There's two critical points here. One is the merits hearing, which was in March of 2019. And the second time is the filing of the brief in November of 2020. At neither of those times, was it clear that he had the right to withholding, of the cancellation of withholding? I think actually under this circuit's precedent at that time, Lopez was the law of the circuit from May 2019 through, oh, sorry, through January 2020. So at least it was a percolating, excuse me, it wasn't the law of the circuit at the time that he filed the brief. But that issue was certainly percolating. There was a circuit split. The Supreme Court had already issued Pereira. Like, I think that it fairly could have been presented to the board at that time. But even if it didn't need to be because he had already, you know, at the time that he filed his brief, that was not the law of the circuit. Again, when the board issued its decision in April, April 28, 2021, the next day, the Supreme Court issued Mish Chavez. This was top of mind for many people. And especially, again, with this petitioner who had this attorney who had already been talking about filing application for cancellation of removal, that was the time to file an application or a motion to reopen based on this new form of relief that had never been presented. Is there any requirement anywhere that you file a motion to reopen in order to exhaust? I'm sorry? Is there any law that requires that you file a motion to reopen in order to exhaust? So all of the cases that the petitioner relies on for this argument that maybe you don't have to present specifically a motion to reopen, you have to present the issue in some way to the agency. Has any court ever held that you didn't exhaust because you could have filed a motion to reopen? I think that the, I guess not that I'm aware of, but there's an abundance of case law that is only addressing issues that were presented to the agency in some way. Even if you didn't file a motion to reopen, the issue has to be presented to the agency either in an underlying application, in a motion to remand. We address a lot of these cases in our brief, pages 31 to 32. I'll just briefly... The agency would have summarily denied, wouldn't they, based on the law at the time because Lopez hadn't been issued yet when the merits hearing took place. They were still operating under the BIA determination of this two-step process or whatever they came up with. And then when the briefing was done on the appeal, Lopez was vacated. Well, Pereira had already been issued in June 2018 before the March 2019 hearing. So Pereira already said a defective NTA doesn't stop time for purposes of cancellation of removal. Didn't the BIA address that issue in their, I forget the name of the decision, but they addressed the issue and they came up with the two-step process? Yes. And there was this discussion of whether this two-step process fixes this issue. But the question of whether it could have been presented at that time, I think it would have fairly been presented and was being presented in cases and leading to the Supreme Court's eventual decision in Nichavez. And again, I just think that on the record... Why don't you conclude, counsel? Okay. On the record before this court, there's no basis to remand for consideration of an application that has never been presented, particularly where to have such an application be reopened and reconsidered by the agency, the petitioner would also need to show the other factors for cancellation of removal, including qualifying relative, hardship, lack of... All of that would be open on remand. So there's no detriment to the agency on that point. It's all going to be litigated. So essentially what you're asking, insisting is that he had to file a motion to reopen to get the same case to the same point that it would get if we remanded now. He had to present the issue in some way to the agency. But what would the agency have done? The agency would have had to say, yes, of course, let's... Because this is what Nez Perez says. So let's... So now we're going to have a hearing on the merits. So that's exactly what would happen if we did it now. There's just no difference. Well, there's just no basis for him not filing, not requesting that before the agency in the four years. But there was no point to it. There was a point after Neshabez was issued. What was the point? That it's the same point as raising it here. You get back to the same place. But this court is reviewing agency error. And there's no agency error where the agency hasn't even had the opportunity to assess... But what would the agency have decided, had to decide? If a motion to reopen had been filed based on Neshabez after Neshabez came out, then the agency would have assessed that motion to reopen. It would have said, yes, the NTA is defective here based on Neshabez.  And then it would have addressed...  And then, but... It was just a pointless step because they had no... It's going to be back in the same exact place, i.e. on the merits before the agency. Right. I mean, I would argue that filing this petition for review instead of filing that motion to reopen based on Neshabez is sort of the step that is improper because the agency hasn't even had the opportunity to address it. We're talking in hypotheticals about... But we know what it would have had to decide if it addressed it. Well, depending on the time that the petitioner filed it, if it had been within the 90-day motion to reopen time period, then based on this new law, that could have been, maybe easily granted based on this defective NTA. If it had been outside of that time period, there would need to be an application with cancellation of removal and prima facie eligibility established. Which again, on this record, there's no evidence of the other pieces of cancellation of removal. There's not even any evidence in the record of his having a qualifying relative. The only evidence in the record about that is his testimony, which is deemed incredible. There's no merit certificate. There's no birth certificates. There's nothing in this record that would compel the conclusion that the agency should have done something differently. All right. Thank you. We'll give you two minutes for rebuttal. Thank you. I just have two points. First, on the motion to reopen, in the government's brief, they cited to matter of Chen from 2023. There, the BIA said, yes, Niche Chavez would apply, but they denied the motion to reopen by saying it's not timely. And that's why Santos-Zacarias says there is no exhaustion required when the remedy is discretionary. The second point is that there are numerous cases where this court has applied Alcarez without requiring the person to file for a remedy at the IJ and without exhausting it to the board. Gonzalez-Lara, which is a published decision, there the non-citizen never filed for a voluntary departure. This court applied Niche Chavez and remanded for cure. Under Caceres-Aguilar, the non-citizen did not raise the issue on appeal because it was foreclosed under the existing law. But this court applied Niche Chavez and remanded it to allow for him to, or allow for the petition to pursue that relief. Santos-Bautista is on point where their administrative closure was never sought before the IJ and was never sought before the BIA because of Castro-Tum. And again, this court ---- Sotomayor, I'm sorry. I'm sorry. What's that? Yeah. I mean, I just want to go back to the CAT issue for a minute. The CAT issue, right? Yes. I just want to clarify something. The adverse credibility finding was did apply to the CAT claim, and the BIA does state that in its opinion. Yes. So is the only thing then you're relying on is the country conditions report with regard to this cartel? Your Honor, I would direct you to page 82 of the IJ's decision, where the first paragraph talks about how the court has deemed the testimony incredible, but in the second paragraph sounds that in the alternative he has not met his burden. But it's in the alternative, so I don't see why. That's what I'm trying to clarify. Are you ---- you never do specifically challenge the credibility finding? Yes, Your Honor, because it wasn't exhausted. Okay. So we have to accept it at this point. Yes. So therefore, all I'm trying to clarify is that with regard to the CAT claim, nothing about his evidence is relevant. His testimony is pertinent. Correct. So the only thing that's pertinent, and nothing about the evidence that was submitted on appeal is pertinent.  So all we're dealing with is the material in the record with, I think it was a single report about this gang. Your Honor, it was more than a report. Page 34 to 37 has the numerous citations from the record that were before the IJ, and that's in the opening brief.  But that's all we're talking about. Correct. Okay. Yes. All right. Thank you, counsel. We thank both counsel for their arguments. The case just argued will be submitted.
judges: BERZON, BENNETT, Tunheim